IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIE FOLKS,

   Petitioner,

v.

WARDEN ALLEN BEARD,

   Respondent.

Civil Action No.: ELH-21-1418

**MEMORANDUM**

Petitioner Willie Folks has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the revocation of his parole and continuation through the expiration of his underlying sentence. ECF 1 (the "Petition"). Respondent Warden Allen Beard answered the Petition, asserting that Folks's claims are without merit. ECF 3. The submission includes several exhibits. Folks filed a reply. ECF 6.

No hearing is necessary. *See* Rules 8(a) and 1(b), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2023). For the reasons that follow, I shall deny the Petition.

**I.**  **Procedural Background**

This case was initiated on June 7, 2021, upon receipt of Folks's Petition. In response, respondent moved to dismiss or, in the alternative, for summary judgment, which the Court construed as an answer to the Petition. ECF 5. Folks filed a reply on August 27, 2021 (ECF 6), and a supplement on December 10, 2021. ECF 9. Folks also filed a motion for appointment of counsel (ECF 14), which was denied, without prejudice, on February 13, 2023. ECF 16.

## II.     Factual Background

Folks was convicted in 1986 in the District of Columbia ("DC") Superior Court for armed robbery of a senior citizen and sentenced to 8 to 24 years of incarceration. ECF 3-3 at 1. He served eight years before he was paroled on June 3, 1994, with a parole expiration date of April 8, 2010. *Id.* Since then, Folks's parole has been revoked five times.

### a. First Revocation

In 1997, Folks was convicted in Fairfax County Circuit Court in Virginia for attempted robbery and using a firearm in the commission of a felony. ECF 3-3 at 11. He pleaded guilty and was sentenced to seven years' incarceration. *Id.* at 14-15. The DC Board of Parole issued a detainer warrant for Folks's return to supervision upon completion of the Virginia sentence. *Id.* at 16. The warrant was executed on June 9, 2003. *Id.* at 17. At his parole revocation hearing in September 2003, Folks admitted to the violations. *Id.* at 18. The hearing examiner found that the guideline range was 48-60 months, but because Folks had already been incarcerated for 79 months, it was recommended that Folks be released in three months to permit for case processing. *Id.* The United States Parole Commission (the "Commission") concurred with the recommendation and issued a Notice of Action granting Folks parole in December 2003. *Id.* at 20.

### b. Second Revocation

The Commission revoked Folks's parole for a second time on December 20, 2005, for violation of several conditions of his parole: use of dangerous and habit-forming drugs, failure to submit to drug testing, violation of special condition (drug aftercare), and failure to follow instruction of supervising officer. ECF 3-3 at 23. He was ordered to serve ten months. *Id.*

### c. Third Revocation

Folks's parole was revoked by the Commission again on September 1, 2008, for failure to submit to drug testing, use of dangerous and habit-forming drugs, failure to report to supervising officer, and possession of cocaine. ECF 3-3 at 26. The possession of cocaine was based on Folks's conviction in DC Superior Court for possession of cocaine. *Id.* The Commission ordered Folks to serve eight months, even though the guidelines set a range of 12-16 months for the noted violations. *Id.* at 26-27.

### d. Fourth Revocation

Between 2009 and 2014, the Commission received numerous violation reports requesting warrants, reprimands, or sanctions, but none resulted in revocation. ECF 3-3 at 2-3. On October 21, 2014, a violator warrant was issued charging Folks with drug and alcohol use, failure to submit to drug testing, and violation of special conditions to not have contact with his ex-girlfriend as well as new criminal charges for threats to do bodily harm and theft. *Id.* at 3. Folks applied for placement in the secure residential treatment program ("SRTP"), which was approved by the Commission. *Id.* at 3, 29-30. Revocation proceedings were postponed while Folks participated in SRTP; if he successfully completed the program, he would be returned to supervision. *Id.* at 31. However, Folks did not complete the program and his parole was revoked on July 8, 2015. He was ordered to serve 12 months, which was at the low end of the guideline range. *Id.* at 33-35.

### e. Fifth Revocation

Finally, on March 3, 2017, the Commission issued a warrant because Folks was charged in the District of Columbia with assault with a deadly weapon. ECF 3-3 at 38, 40. He was convicted in the DC Superior Court and sentenced to 24 months of incarceration and three years of supervised

release. *Id.* at 41. Folks was released from his 24-month sentence to the Commission on November 16, 2018. *Id.* at 3-4.

A revocation hearing was held on May 24, 2019, at which Folks admitted to charges of failure to submit to drug testing, violation of special condition for drug aftercare, use of dangerous and habit-forming drugs, and law violations for the DC Superior Court conviction. ECF 3-3 at 43-44. The hearing examiner classified assault with a deadly weapon as an Offense Category Five and determined that Folks had a Salient Factor Score ("SFS") of 2, which resulted in a guideline range of 60–72 months of incarceration. *Id.* at 44. Taking into consideration the facts of Folks's most recent conviction and his prior history of violence, the hearing examiner found that Folks's continued incarceration was "necessary to protect the public" and that he should be incarcerated to the end of his sentence, *i.e.*, about 99 months. *Id.* at 45. The hearing examiner explained that the departure from the guideline range in light of Folks's prior assault convictions and his four prior parole revocations demonstrated a pattern of committing violent crimes that was likely to be repeated if Folks were released. *Id.* at 46.

The Commission concurred with the recommendation and revoked Folks's parole on June 27, 2019. *Id.* at 47-50. The Commission continued Folks to the expiration of his sentence for the same reasons cited by the hearing examiner. *Id.*

On June 23, 2021, the Commission held a hearing to consider whether there was any evidence that could affect the Commission's decision. ECF 3-5 at 5-6. A Notice of Action was issued on July 16, 2021, stating that the Commission made no change to its decision. ECF 3-6.

### III.   Discussion

A § 2241 petition attacks the manner in which a sentence is executed. *See* 28 U.S.C. § 2241(a). In his Petition, Folks asserts that the Commission engaged in double counting by

4

considering his violation behavior and his criminal history to determine the guideline range and to justify the decision to continue him through the end of his sentence, which exceeded the guideline range. ECF 1 at 12. Folks argues that the Commission relied upon the same factors to determine the guidelines and then to depart from those guidelines. *Id.* Additionally, he contends that the Commission should not have considered the facts of his original offence and prior violations because his SFS already factored in his prior convictions. *Id.* at 13. He also asserts that there were mitigating circumstances in his case. *Id.*

Pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, codified at D.C. Code § 24-131(a)(2), the Commission took over the responsibilities for D.C. Code felony offenders from the D.C. Board of Parole. *See Franklin v. District of Columbia*, 163 F.3d. 625, 632 (D.C. Cir. 1998); *see also Simmons v. Shearin*, 295 F.Supp.2d 599, 602 (D. Md. 2003). The Commission applies its guidelines to decisions concerning the reparole of D.C. prisoners. *See* 28 C.F.R. § 2.81(a) ("If the prisoner is not serving a new, parolable D.C. Code sentence, the Commission's decision to grant or deny reparole on the parole violation term shall be made by reference to the reparole guidelines at § 2.21.").

The Commission has established guidelines indicating "the customary range of time to be served before release for various combinations of offense (severity) and offender (parole prognosis) characteristics." 28 C.F.R. § 2.20(b); *see* § 2.21(b) (stating that the § 2.20 guidelines shall be applied in reparole determinations). These guidelines are not mandatory – "[a] decision outside these guidelines (either above or below) may be made when circumstances warrant." 28 C.F.R. § 2.21(d). The guidelines are set up in a matrix considering, along the vertical access, "Offense characteristics: Severity of offense behavior" divided into eight categories, and, along

the horizontal access, "Offender characteristics: Parole Prognosis," also referred to as the Salient Factor Score or SFS, divided into four categories. 28 C.F.R. § 2.20.

### a. Departure from Guideline Range

Pursuant to 28 C.F.R. § 2.80(n), "[t]he Commission may, in unusual circumstances, grant or deny parole to a prisoner notwithstanding the guidelines. Unusual circumstances are case-specific factors that are not fully taken into account in the guidelines, and that are relevant to the grant or denial of parole." The Commission is required to "specify in the notice of action the specific factors that it relied on in departing from the applicable guideline or guideline range." *Id.*

Factors that may warrant a sentence above the guidelines include, 28 C.F.R. § 2.80(n)(2):

> **(i)** Poorer parole risk than indicated by salient factor score. The offender is a poorer parole risk than indicated by the salient factor score because of —
> **(A)** Unusually persistent failure under supervision (pretrial release, probation, or parole);
> **(B)** Unusually persistent history of criminally related substance (drug or alcohol) abuse and resistance to treatment efforts; or
> **(C)** Unusually extensive prior record (sufficient to make the offender a poorer risk than the "poor" prognosis category).
>
> **(ii)** More serious parole risk. The offender is a more serious parole risk than indicated by the total point score because of —
> **(A)** Prior record of violence more extensive or serious than that taken into account in the guidelines;
> **(B)** Current offense demonstrates extraordinary criminal sophistication, criminal professionalism in the employment of violence or threats of violence, or leadership role in instigating others to commit a serious offense;
> **(C)** Unusual cruelty to the victim (beyond that accounted for by scoring the offense as high level violence), or predation upon extremely vulnerable victim;
> **(D)** Unusual propensity to inflict unprovoked and potentially homicidal violence, as demonstrated by the circumstances of the current offense; or
> **(E)** Additional serious offense(s) committed after (or while on bond or fugitive status from) current offense that show unusual capacity for sustained, repeated violent criminal activity.

In the Notice of Action, the Commission stated that it was departing from the guidelines because it regarded Folks as a more serious risk than indicated due to his history of violence. ECF

3-3 at 48. The Commission also noted that this was Folks's fourth parole violation[1] and the present violation was due to conviction for another violent offense, Assault with Significant Bodily Injury. *Id.* Thus, it appears that the Commission found Folks fell into both of the categories identified above: he was an unusually persistent failure under supervision in light of the numerous revocations and he had an extensive history of violent behavior.

Judicial review of U.S. Parole Commission decisions is extremely limited. *Garcia v. Neagle*, 660 F.2d 983, 988 (4th Cir. 1981) ("Where the controlling statute indicates that a particular agency action is committed to agency discretion, a court may review the action if there is a claim that the agency has violated constitutional, statutory, regulatory or other restrictions, but may not review agency action where the challenge is only to the decision itself.") (citing *Ness Inv. Corp. v. U.S. Dep't of Agr.*, 512 F.2d 706, 715 (9th Cir. 1975)). Thus, to the extent that Folks challenges only the Commission's decision itself, *i.e.*, the determination that there were extenuating circumstances that caused the Commission to depart from the guidelines (ECF 1 at 13), rather than a claim of a violation of a constitutional or statutory right, the Court may not review the Commission's decision. Therefore, Folks is not entitled to habeas relief on this basis.

### b. Double Counting

"Parole is not a right and Congress has delegated sole discretionary authority to grant or deny parole to the United States Parole Commission." *Romano v. Baer*, 805 F.2d 268, 270 (7th Cir. 1986) (citing *Iuteri v. Nardoza*, 732 F.2d 32 (2nd Cir. 1984); *Stroud v. United States Parole Comm'n*, 668 F.2d 843 (5th Cir. 1982)). However, the Commission cannot act arbitrarily or capriciously. *Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir. 1982).

---

[1] The hearing examiner mistakenly refers to the 2019 revocation as the fourth parole revocation. As previously described, it was Folks's fifth revocation.

Notably, "[t]he Parole Commission . . . cannot use aggravating factors to continue a prisoner beyond the guidelines when such factors were used initially to place the prisoner in a particular severity category. Such a practice is known as 'double-counting' and constitutes an abuse of discretion." *Romano*, 805 F.2d at 271 (citing *Harris v. Martin*, 792 F.2d 52 (3d Cir. 1986); *Elsea*, 676 F.2d 282); *but see Torres-Macias v. United States Parole Comm'n*, 730 F.2d 1214, 1218 (9th Cir. 1984). "[T]o determine whether double-counting has occurred, the crucial comparison is between the factors used to place a defendant in a severity category and the factors used to continue a prisoner beyond the guidelines – a comparison between the elements of the offense for which a prisoner was convicted and the aggravating factors is simply not relevant to a determination of whether double-counting has occurred." *Romano*, 805 F.2d at 271.

Folks contends that the Commission engaged in double counting by "considering his violation behavior and his criminal history to determine both his guideline range [specifically, the SFS] and justify its decision to continue him to the expiration of his sentence." ECF 1 at 12, 13. Folks asserts that his SFS already factored in his prior convictions. *Id.* at 13. Respondent argues that neither Folks' prior revocations nor the nature of his past crimes were used in calculating his SFS and therefore the Commission did not double count. ECF 3-1 at 14.

A prisoner's SFS is calculated based on six scored items (Items A-E), which produce a score between 0 and 10. Item A counts all prior convictions or adjudications (adult or juvenile) for criminal offenses; Item B counts all prior commitments of more than 30 days (adult or juvenile) resulting from the Item A convictions or adjudications; Item C is determined based on the inmate's age at the time of the current offensive conduct; Item D is determined by whether the inmate had a 30-day sentence within the last three years; Item E accounts for whether the offense was committed while on probation or parole; and Item F accounts for whether the inmate was over 40

years old at the time of the offense.  28 C.F.R. § 2.20, Chapter Thirteen, Salient Factor Scoring Manual, Items A-F.

Because Folks has more than four prior convictions, his Item A score is 0.  ECF 3-3 at 4.  The Commission found that Folks's Item B score is also 0 because Folks had six "commitments of more than 30 days that were imposed prior to the last overt act of the current offense."  *Id.* at 5; 28 C.F.R. § 2.20, Chapter Thirteen, Salient Factor Scoring Manual, Item B.  Folks's Item C score is 1 because he was more than 26 years old at the time of his fifth revocation offense and had more than five prior commitments.  28 C.F.R. § 2.20, Chapter Thirteen, Salient Factor Scoring Manual, Item C; ECF 3-3 at 5.  Because Folks was last released from commitment on October 20, 2015, *i.e.*, less than three years prior to the current offense date of March 23, 2016, his Item D score is 0.  ECF 3-3 at 5.  Folks's Item E score is 0 because he was a parolee at the time of the conduct.  *Id.*  Finally, Folks's Item F score is 1 because his Item A-E scores total 1 and he was more than 40 years old when he committed the current offense.  *Id.*  Thus, Folks's total SFS was calculated at 2.  *See* ECF 3-3 at 50.  On the scale of 1 to 10, those with lower scores are determined to be more likely to violate parole.  *See* 28 C.F.R. § 2.20.

The parties do not dispute that Folks's SFS set the customary guideline range at 60-72 months' incarceration.  *See* ECF 3-3 at 48.  The Commission's stated reasoning for departing from the guidelines is its view that Folks is a more serious risk than indicated, based on his history of violence.  *Id.*  The Commission noted that Folks's prior convictions included "two separate counts of Burglary and Attempted Robbery, another Attempted Robbery and Use of a Firearm During the Commission of a Felony, and Simple Assault."  *Id.*  The Commission also took into consideration the numerous times that Folks violated his parole and the instant violation behavior, which involved another violent offense, assault with significant bodily injury.  *Id.*  Folks's pattern of

9

violent crimes was deemed likely to be repeated if he were released and thus the Commission determined that Folks's continued incarceration was necessary. *Id.*

Folks contends that the Commission double counted because his prior revocations and the nature of his past crimes were also used to calculate his SFS. ECF 6 at 3. However, the SFS does not consider the nature of a person's convictions in its calculation. Instead, Item A considers the number of prior convictions and Item B considers the numbers of commitments. Thus, the Commission's consideration of the violent nature of many of Folks's prior crimes does not repeat any of the criteria used to calculate his SFS. Similarly, the SFS factors do not consider the number of previous parole violations that Folks had on the original offense of armed robbery of a senior citizen.

Furthermore, contrary to Folks's assertion that the Commission considered the facts of his original offense (ECF 6 at 3), nowhere in the Commission's reasoning does it rely on the facts of Folks's original offense. The only reference made to Folks's original offense is to cite that Folks is in fact on parole for that conviction. ECF 3-3 at 48. As such, the Commission did not consider the same criteria in departing from the sentencing guidelines as that relied upon in calculating Folks's SFS. Therefore, it did not engage in double counting. Consequently, Folks is not entitled to habeas relief on this basis.

### IV. Conclusion

For the foregoing reasons, the Court will deny Folks's Petition for writ of habeas corpus. The court also declines to issue a certificate of appealability. A habeas petitioner has no absolute entitlement to appeal a district court's denial of his petition absent issuance of a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1) (Unless a circuit justice of judge issues a certificate of appealability, an appeal may not be taken from … the final order in a habeas corpus proceeding in

which the detention complained of arises out of process issued by a State court; or … the final order in a proceeding under section 2255").

A certificate of appealability must be considered in this case because the petition challenges a detention arising out of State court process. However, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Folks fails to meet this standard and the Court declines to issue a certificate of appealability.

Nevertheless, Folks is advised that he may still ask the United States Court of Appeals for the Fourth Circuit to issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order follows.

September 27, 2023                              /s/
Date                                            Ellen L. Hollander
                                                United States District Judge